This is the case of Qualcomm Incorporated against Nokia, this proceedings item. This is the case of Qualcomm Incorporated against Nokia, this proceedings item. This is the case of Qualcomm Incorporated against Nokia, this proceedings item. This is the case of Qualcomm Incorporated against Nokia, this proceedings item. Your Honor, we prefer to proceed with the procedure as you outlined it. As for Qualcomm, there are some issues that are in the record that should remain confidential. I don't believe those are going to come up. We'll be happy to do that, Your Honor. Okay. Please proceed. Thank you, Judge Newman, and may it please the Court. This is an appeal from the district court's decision denying a motion to stay district court proceedings in a patent infringement case pending an arbitration. The only issue before this Court is not the merits of the arbitrability of the issues in the arbitration. It is only the issue of jurisdiction, that is, the issue of who gets to decide the arbitrability of the estoppel and license issues. Is it the district court that gets to decide that, or is it the arbitrator who gets to decide the arbitrability of the estoppel and license issues? Well, let me ask you a question about that. Under the patent law, we frequently have re-exams while there's a pending litigation on patent infringement, which might also include questions of validity as defenses. And from what I've seen, at least, district courts quite often proceed with the infringement case while a re-exam is pending. Why, in this case, since the estoppel issues, which are the only issues that we're talking about, the arbitrability questions being raised concerning those, why, in this case, couldn't the judge proceed with at least the infringement case? Why is it within his discretion to proceed with the infringement case and, at most, stay the adjudication of the estoppel questions? You're asking for the whole thing. You're saying he should have stayed everything. Why isn't this comparable to the re-exam analogy that I'm talking about? Your Honor, this is very different from the re-exam context because there's a contract for arbitration in this case. And the policy of the Federal Arbitration Act is clear, and the governing Supreme Court precedent, such as first options, is clear, that the party's contract for arbitration is what governs the referral to the arbitrator in this case. And if it's proper for the arbitrator to have jurisdiction over the issues, then a stay is mandatory. The district court does not have discretion. It's quite different from the re-exam. And I think to answer Your Honor's question, we really have to look at the contract. And it's very straightforward. The contract here has an arbitration provision. That's in paragraph section 22 at Joint Appendix 137. The arbitration agreement plainly says we incorporate by reference the arbitration rules, the AAA arbitration rules, applicable to international disputes. And those arbitration rules, the second step of the analysis is those arbitration rules in Article 15.1 clearly provide that the arbitrator is to be the judge of his own jurisdiction. Specifically, Article 15.1 provides, and this is at Joint Appendix 1071, provides the tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. So your view on that issue, and I think I understand it from the briefs, is that the case law makes clear that that sort of shifts the satisfied requirement under the statute and means that there's a clear and unmistakable requirement that the parties then proceed to arbitration because of that reference. That's exactly right, Your Honor. And that's Dream Theater and... That's Dream Theater and Anderson. And first options. Really, it's the Supreme Court that's told us that it's up to the parties to decide at the outset when they make their agreement. Do you want the district court to be deciding what issues are arbitrated? Right. But just moving on to my question, which is accepting that. Yes, Your Honor. And as I said from the briefs, I think your views about that are quite clear. Your briefs also, at least as I read them, seem to suggest that that is the end of the inquiry for the district court. That's correct. That's the whole enchilada. And I'm a little confused about that because I find at least some case law which suggests, including Dream Theater, Dream Theater cites another California Supreme Court case. We found a Fourth Circuit case and a First Circuit case that suggests that there are two tests. There's this clear and unmistakable test, and then there's this other test called wholly groundless. I mean, suggesting that there is an inquiry, as you suggest, clear and unmistakable. But then there's some further inquiry by the district court that he or she can make to also preclude arbitrability. Do you agree? Your Honor, we do not agree. We think there's just one test for a contract like ours. For a contract like ours in which the parties agree that the arbitrator is the judge of his own jurisdiction, then the test is simply does the district court – the district court looks at two things. The district court looks at is there a binding agreement for arbitration on the parties before the court. That's the case here. There's no issue here as there is in some of those cases you mentioned, Your Honor, about non-parties being before the court. If there were non-parties before the court, you'd have to ask are the non-parties also bound by this arbitration agreement. But if the district court says, yes, the parties before me are bound by the arbitration agreement, there's no controversy about that here. Qualcomm and O'Keeffe are both bound by it. The district court then asks, did they agree that the arbitrator would decide jurisdiction? Here they clearly did. There's no dispute about that. Now what Dream Theaters refers to, Your Honor, with that reference to wholly groundless is just as well if on the face of the agreement somebody raised something that was so groundless to suggest that it was referable to arbitration. Imagine, for example, that the negotiators have a car accident, a fender bender on the way out of the negotiations, and then they try to bring the tort action in and say, well, that's part of the contract, too. That's related to the contract, too. That might be a different issue. But that's not this case, because in this case, we're so far from that extreme circumstance here that you don't even get close. In fact, here, the arbitrator has already ruled that the issue of estoppel is arbitrable because related to the contract. So in this case, as you know from the motion for judicial notice that is before you, this case has been proceeding in arbitration. A substantial record has already begun to be developed. And the arbitrator has ruled that it's not. Yeah, but we're not going to, I mean, but we don't expect a district court to, a district court typically, when they're making this wholly groundless analysis, which you've just agreed, they make some sort of analytical, you know, the car accident case or something else. They do make a determination. They don't have the benefit of hindsight of knowing what the, so in any of those cases, it could hypothetically be this. And if it ever went to an arbitrator, God knows what an arbitrator might do. Sure, Your Honor. But let's focus on why we win even if the district court just stops the film at the moment that the motion was before it. Even at that point, clearly, we meet any possible understanding of the relatedness test. So to be clear, we argue that the district court just asks, is there an arbitration agreement? Did the parties agree to have the arbitrator decide the question of arbitrability? We think he should stop there. But if he were to go, and we think the district court erred as a matter of law below by confusing the referability question, which should just look to what the agreement said about who decides arbitrability. Here, it's the arbitrator. We believe he made a legal error by going on and asking, well, is there relatedness? But, Your Honor, even if he was permitted to go on and take a quick look at the relatedness question, is this groundless or is this related, we so easily satisfied, even without the benefit of the arbitration. Yeah, but don't you have a problem? That may or may not be true, but the district court didn't do that. So aren't you, if we accept, if you accept and we agree that there is some threshold, groundless, patently wrong, some sort of analysis, isn't it incumbent upon us to send it back to the district court so that he or she in the first instance can make that determination? And the second part of that question is, and if that determination is made below, isn't it really just an abuse of discretion review by our court on that determination? Absolutely not, Your Honor. The review here is de novo. And this court is in just as good a position as the district court to make the decision on both the question of referability, did the parties agree to have the arbitrator to decide issues of arbitrability, and it's also de novo on the question of relatedness. That is, you should be deciding just in interpreting the contract, is this a case arising from or related to the issues, or the issues here arising from or related to the agreement? Now, the district court erred by saying, well, the issues here aren't even remotely connected. That's clearly legal error, because if you look at this contract, this is, there are many kinds of arbitration contracts. This happens to have the broadest clause imaginable, the magic words, and related to. Related to does not mean arising from. That's the error in Qualcomm's argument. Related to does not mean arising from. We don't have to claim that error claims are arising from the contract.  We're claiming that Qualcomm has stopped from asserting against us GSM patents in existence at the time of the agreement, that it, through misleading conduct or omissions, represented to us, they would not assert against us. That's the estoppel claim. That's clearly related to the contract, Your Honor, in two senses. Number one, it arises from the negotiations leading up to the contract. And number two, the equitable estoppel claim, whether it's brought under California law or under this court's doctrine of patent equitable estoppel, the estoppel claim asserts that the contract was the basis for our detrimental reliance. Those two facts, that the estoppel arises from the conduct of the negotiation of the contract, and the fact that the contract is the basis for detrimental reliance, easily satisfy the related to standard. Well, let me follow up on that then. I mean, maybe it's because I was a labor lawyer my prior life. I'm having a hard time getting my arms around an arbitration of the estoppel question. So maybe you can help me out on it by looking at what is, hypothetically, what is the arbitrator to do? Let's assume he's dealing with the merits. He's not interpreting the contract. He's not even interpreting sort of extrinsic evidence that went to the meaning of a contract term. What, for instance, if he agreed with your point, what kind of remedy would he have the authority to order in this case? Would he say the contract is null and void because there was fraud in the negotiation of the contract? And is that some authority that an arbitrator has? No, Your Honor. The arbitrator would simply hold that Qualcomm was a stop from asserting against Nokia GSM patents that were concealed. Any GSM patents existing at the time of the agreement that were concealed from Nokia in the course of the negotiations. And Nokia was entitled to rely on the implicit or explicit promise that it wouldn't assert those patents. So he would have the authority to both declare and, in effect, enjoin Qualcomm asserting GSM patents against Nokia. We don't ask here for rescission of the contract. We don't ask for voiding of the contract. But the estoppel claim is related to, on any definition of related to. Let's be clear that this circuit will follow the regional circuit law on this. The regional circuit law comes out of the Simula and other cases. It requires only that an issue touch upon, that an issue to be related to, the issue in the arbitration need only touch upon the claims. The issue in the arbitration need only touch upon the claims that are before the court. So, for example, in your context, Your Honor, you can have an employment contract. And the Title VII claims might touch upon the claims in the employment contract. But it is unusual, is it not, for an arbitrator, for an issue before an arbitrator would involve, if there was fraud, misrepresentation, concealment in the negotiation of this contract, then he or she, the arbitrator, has the authority to say that parties are precluded from pursuing those other issues, which they concealed in a judicial form. Yeah, actually not, Your Honor. Even Prima Paint, the foundational Supreme Court case on deference to arbitral proceedings, suggests that the arbitrator can look at whether there was fraudulent inducement in the conduct of the negotiations. Now, we're not alleging fraudulent inducement here. But we're alleging patent estoppel and equitable estoppel based on a similar structure. There was conduct and omissions. And this court's patent estoppel doctrine under Ackerman is clear that omissions can count, silence can count, as a basis for patent estoppel. And in certain contexts, on the totality of the circumstances, we're alleging that the conduct in the course of the negotiations and the omissions and silence in the course of the negotiations is stop Qualcomm from asserting then-existing GSM patents against Nokia. So it's very similar to Prima Paint. It's very similar to other cases it's related to. So we don't think you get to relate it to. We think the district court erred by getting to the connection or relatedness question. He should have stopped when he read the agreement and saw that 15.1 leaves arbitrability to the arbitrator. But if you were to go on to that, he erred as a matter of law in saying this was not related. Now, the license issue is conceded by Qualcomm to be related to the contract. We have another complete affirmative defense. Estoppel would be a complete affirmative defense to the patent infringement litigation. License would also be a complete defense. Qualcomm has not challenged the arbitrability of the license. Obviously, that's related to the contract. If we're licensed under the contract, we can't have infringed. So they simply argued that that issue is moot because they amended their complaint. We think that argument is circular. Amending the complaint to say that we're not going to go after any licensed products begs the question of what products are licensed. So we think that even if you disagree with us about the Estoppel, there's a grant for staying the proceedings based on the license issues conceded related to the contract. I'll reserve the balance of my time. Thank you. Thank you, Ms. Sullivan. Mr. Mammon. Good morning, Your Honors. I'd like to start by responding to Judge Prost's question about the patent infringement issues and why isn't it within the discretion of the court to stay the Estoppel claim and to proceed with the infringement questions. We think that's exactly the right question to be asking. The district court expressly refused to stay those infringement questions, and that is subject to an abusive discretion review that was part of the court's discretionary review. The Mediterranean Enterprises case and the Leyva case, both Ninth Circuit cases, make it clear that issues which are not themselves claimed to be arbitrable but may be impacted by the arbitration are within the scope of the court's discretion. Well, I think, I mean, the answer to your question of Ms. Sullivan, I mean, you've read the Nicoya briefs. I mean, their answer is Dream Theater and the other cases which make it quite clear and analogous, in circumstances analogous to this case, that if you've waived it, you've waived the whole thing. The other thing that didn't come up in our earlier conversation is I read the statute, so tell me if you think I'm wrong, to quite broadly, if once you get to the satisfied issue, the language of the statute under Section 3 seems to talk about shall stay the action. So if an issue involved in a suit is found to be referable to arbitration, so just concede, to concede, estoppel is referable to arbitration, the language of the statute says shall on application of one party stay the trial of the action. Now, so I'm reading that. Tell me why I'm wrong, why you disagree, that if it's just one issue, it consumes the whole action, whether we think that's fair or, as a policy matter, good or bad. I'm reading the statute as requiring that. Why am I wrong? As set forth in footnote 3 of Nokia's brief, there does appear to be a difference among the courts on this issue, and there are at least two Ninth Circuit cases holding that you go claim by claim or issue by issue on that analysis. That's the Mediterranean case and the Leyva case. As to the Dream Theater issue and, indeed, all of the cases that Nokia relies upon, none of those arise under the Section 3 context. They're all under Section 4, Section 9, or other contexts in which the question presented in the statute is not a question of arbitrability. Here, Section 3, the text of Section 3, could not be clearer that this court is required to satisfy itself that the issue is referable to arbitration. A number of cases have held, consistently required, that this is not a who-decides issue. This is a question of, under Section 3, did the court properly satisfy itself that the issue was referable to arbitration? Some of the cases that have reached this conclusion, the Britain court case from the Ninth Circuit in, I believe, footnote 8, states that the district court is directed to grant a stay only when it has determined that the issue is to be arbitrated. The Bowlby case, which is cited in our briefs, also holds that the court is required to determine the scope of the arbitration agreement. And the Boston telecommunications case, also cited in the briefs, arises under the foreign arbitration provisions of the Federal Arbitration Act, a very similar provision to Section 3, again holds the role of the court involves determining arbitrability. If we were to split the issues, stay on estoppel, go on infringement, under the court's discretion, if the arbitrator rules first on estoppel, is there res judicata under the district court's proceeding, once he or she gets to the estoppel question? The issue then on the conclusions that are reached by the arbitrator under those circumstances would presumably be referable or reviewable under the provisions set forth in the Federal Arbitration Act. Reviewable by the district court. They would proceed presumably according to the procedure set forth for handling a final ruling by the arbitrator. But we believe that the issues, not even the estoppel issue, should have been subject to a stay. And the reason for that is because Nokia's GSM-only estoppel claim has nothing to do with the party's CDMA license agreement. And the district court correctly ruled that this GSM-only claim is not arbitrable under the arbitration clause of this CDMA agreement. But you disagree with the applicability of Dream Theater and so forth, but if we're going to construe the arbitration award, there's no dispute, is there, that the arbitration agreement, that it references the AAA rules, and that that clearly is incorporated then within the scope of the arbitration agreement. Those rules and that particular rule, I guess it's whatever, 15, that says the arbitrator. The AAA rules are clearly incorporated into the arbitration agreement. But let me be clear about this. Contrary to Nokia's suggestion that the arbitration rules exclusively empower the arbitrator to decide arbitrability, the arbitration rules merely state that the arbitrator has the power to determine its own jurisdiction. And therefore, there's nothing inconsistent with granting the arbitrator that power, yet construing Section 3 to require the court to make its threshold Section 3 inquiry. So Dream Theater, Anderson, that entire line of cases does not apply here because they are not Section 3 cases. Isn't it implicit in the rules that if the parties have granted the arbitrator that authority, then that is the exclusive authority? I don't think so because the – I mean, when the parties say in a typical arbitration, an arbitrator shall have authority to construe the terms of this agreement, isn't that implicitly suggesting that they can't then go into a – run into court and ask some judge to construe the agreement under some contract theory, right? If that were the case, it would place the arbitration agreement and the incorporation of the AAA rules in direct conflict with Section 3. Section 3, federal statute, subject to the supremacy clause, is going to govern here, and the court has the power under Section 3 regardless of whether the parties have agreed to adopt AAA rules. So Mr. Mannon, the Supreme Court, though, has said if there's a clear and unmistakable indication that the parties intended the arbitrator in the first instance to determine arbitrability, then the arbitrator does that and the district court doesn't do that. And that was in a section – it's in several cases, none of which are Section 3 cases. None of the cases in which the court has reached that conclusion are ones in which there was a statutory obligation on the court to inquire and satisfy itself that the issue was arbitrable. You're saying all of those Supreme Court cases are different, then? They are all a different line of cases arising under different provisions of the Act. The cases that govern here are the ones such as the Bowlby case, the Boston Telecommunications case, that hold that the court makes a threshold inquiry. This is clear also, the notion that the court is to make a threshold inquiry as to the statutory question has also been reaffirmed in some of these Section 4 cases. Three Valleys, for example, the Ninth Circuit held that only a court can make the Section 4 inquiry there. So the principle that we're advocating here is that with respect to the statutory inquiries provided under Section 3 or Section 4, the court always retains that responsibility and that obligation to make that inquiry. Well, if you're talking about a threshold inquiry, Ms. Sullivan, well, she didn't concede it, but she sort of recognized that there might be a second test besides the waiver test, which is that it's a groundless claim or a patently false claim, which some of the cases refer to. So is that what you're talking about, or do you agree with that view? That there are really two tests to look at, or are you saying there's no first test at all? I'm saying the court can apply the substantial relationship test or the significant relationship test of simulant in inquiring into the arbitrability question. And under that test, the court here can correctly find that there was no significant relationship between the GSM estoppel claim and the CDMA license agreement. But you keep sort of arguing that the cases don't deal with Section 3. But in any kind of case, doesn't the court, when there's an arbitration agreement that's been raised, doesn't the court have to satisfy itself that the party— doesn't the court satisfying itself require that he determine whether or not the parties have clearly and unmistakably determined that these kinds of disputes should be before an arbitrator? I mean, that doesn't seem to me to be an extraordinary proposition, that that's what the court would do. And if the court finds that, then the court ought to be satisfied. The cases—we've studied these cases extensively. All of those cases in which that question has arisen have not squarely addressed the conflict between that question as applied to these AAA rules cases and the Section 3 statutory requirement. Well, the Section 3 requirement just says, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, she'll stay it. And the courts, the Bowlby case, which was a case where the arbitration agreement included AAA rules, the Boston telecommunications case, which also included rules similar to and containing the same kind of provision as the one at issue here, both held that the court is to inquire in the Section 3 inquiry in satisfying itself about the scope of the arbitration clause, about the arbitrability issue. Right. And in doing so, they determine whether the parties have clearly decided for themselves that that kind of issue should be decided by the arbitrator. Not in either of those two cases. In those cases, the reference to the AAA rules was not the analysis that the courts undertook. They separately undertook an arbitrability determination. And that's what the court did here. Turning to your question about the extreme example, Ms. Sullivan used the example of a car wreck. In the district court, the examples that were used were of a sale of a cruise ship or of a sale of an atomic bomb. And it was the judge's example. In those cases, the record, I think, indicates, this is in the February 13th transcript, that even under that kind of a test, which also conceded at the district court level, the judge was persuaded that these GSM claims were no more related to the CDMA agreement than the example of the cruise ship. So is it your view that we at most should send it back to the district court to determine whether, if we were to conclude that the test is sort of a groundless test, in addition to the clear and unmistakable waiver test, that we should send it back to the court in the first instance and then review his determination on an abuse of discretion standard? I think the record is adequately clear that the court has already reached such a determination that affirmance is proper. So you construe his, what did he use the term, even remotely you think that's analogous to groundless or whatever, and then we review that, so we don't need to send it back. We just review that under abuse of discretion. The abuse of discretion review I think is the appropriate standard of review. There's two other points I'd like to make sure to address. You say abuse of discretion, but it's contract interpretation, is it not, fundamentally? There are several issues here. The question of arbitrability itself is subject to review under the de novo standard. The cases are clear on that. The ALISCOM case that we cited in our briefs is probably the best case for that. But the other issues surrounding this issue, including whether to stay, the remaining patent infringement issues, and so forth, are abuse of discretion. The license defense issue is a manufactured dispute that fails on case or controversy grounds. Qualcomm does not accuse any licensed CDMA products. And I want to be clear, the court ruled that this was the case in its March 14th order, and that was before the filing of the amended complaint. So the court reached a clear holding on this even before we filed our amended complaint. Paragraph 24 of the amended complaint is the nail in the coffin on this issue. It's absolutely clear that there's no dispute on this issue. So to recap, the court properly undertook the inquiry required of it under Section 3 of the Federal Arbitration Act, properly found Nokia's estoppel claim to be non-arbitrable under the 2001 agreement, and that ruling must be affirmed. But even if Nokia were correct that litigation of the estoppel and licensed defense issues should be state-pending arbitration, the scope of the stay is properly limited under LEVA and Mediterranean Enterprises to those issues that are actually referred to arbitration. There's no contention that the infringement issues themselves are arbitrable, and any decision to stay those is squarely within the court's discretion to control its own docket. I would finally note that Nokia has not appealed the discretionary portion of the court's ruling which appears in the March 14th order. Thank you. Okay. Thank you, Mr. Madden. Ms. Sullivan, you have a little more time. Your Honor, there is nothing to send back to the district court. The district court erred when he peeked behind the party's agreement and looked into the question of relatedness or connectedness. I can quote from the Anderson decision, when a court concludes that the parties clearly didn't power an arbitrator with the arbitrability decision, it would defy logic, tread on the prerogative of the arbitrator, and deprive the parties of their contract if a court were then to turn around and decide this very issue itself. That's exactly what the district court did. That's exactly what Qualcomm is asking to be affirmed. That's error, end of case, reverse, and stay. As to the question, Your Honor, of whether you should stay the whole proceeding while the arbitrator decides the issues of license and estoppel, we respectfully submit that, yes, that is the correct approach. The district court should have stayed the whole proceeding. Let me say why. First, the license issue is, if we're right that there's a license defense to Qualcomm's current suit, that should protect us against the burden of all litigation. It's not a defense to be decided later. It's a complete affirmative defense. And we should be entitled to our bargain that that should go to an arbitrator to make sure that that license defense, which they concede is arbitrable, is decided. And the argument that it's been mooted out by a circular amendment of the complaint is unavailable. The complaint's been amended to say that we won't charge any CDMA-licensed products, but the very issue before the arbitrator is, are some of the CDMA-licensed products also products that read on Nokia's GSM products? That's the issue before the arbitrator. Let me ask you before the time ends, what is your response to Mr. Mammon's argument? He takes the position that these various Supreme Court cases that we've all been reading, obviously, do not apply here because they aren't 9 U.S.C. Section 3 cases. What is your response to that? Your Honor, we respectfully disagree entirely with that proposition. The only difference between Section 3 and Section 4 is Section 4 is about compelling an arbitration. That's not an issue here because Qualcomm has submitted to the arbitration, and so we didn't have to go into the district court and seek compulsion under Section 4. The substantive standard is no different. Justice Breyer, writing for the Supreme Court in First Option, said very clearly, it's a matter of default rules. Court decides arbitrability unless we clearly and unmistakably, as Your Honor suggested, if there's a clearly and unmistakably, if we've clearly and unmistakably contracted out of that default and directed the gateway issues of arbitrability to the arbitrator, end of case. And it doesn't matter whether it's an Article 3 or an Article 4 case. The only reason why First Options was an Article 4 case is that there, unlike Qualcomm, the adverse party didn't submit voluntarily to arbitration. There was a motion to compel. So with respect, Your Honor, we think that Article 4, Article 3 distinction is, Section 3, Section 4 distinction is absolutely groundless. So with respect, Your Honor, we request reversal, and there's no need to remand for any factual issue. De novo overview is proper, as Your Honor suggested, as Judge Newman suggested, because even if you get to relatedness, it's just a question of contract interpretation, and the contract interpretation here, plainly, this is related to. The estoppel claim in the license plate is concededly related to. The estoppel claim is related to. Related to is the broadest form of arbitration clause, and Mitsubishi remind us that if there's any doubt, all inferences should be drawn in favor of arbitrability. Thank you very much. Thank you, Ms. Sullivan. Mr. Madden, the case is taken.